**RHEIN'S MUSIC HOUSE, Inc., a corporation (Plaintiff), Respondent,**

v.

**Ralph TAYLOR (Defendant), Appellant.**

No. 29930.

St. Louis Court of Appeals.
Missouri.

Dec. 2, 1958.

Rehearing Denied Dec. 30, 1958.

Finley, Lucas & Arnold, Joseph A. Murphy, St. Louis, for appellant.

N. Murray Edwards, Ninian M. Edwards, St. Louis, Listeman, Bandy & Heiligenstein, East St. Louis, Ill., for respondent.

ANDERSON, Judge.

This is an appeal by defendant from a judgment in a jury waived case in favor of plaintiff on its cause of action, and in favor of plaintiff on a counterclaim filed in said cause by the defendant.

Plaintiff's petition, as amended, sought recovery on an alleged indebtedness due from the defendant. It was alleged that on or about April 26, 1954, defendant was employed by plaintiff under a verbal agreement; that plaintiff agreed to pay defendant a stipulated drawing account and certain commissions upon the sale of plaintiff's merchandise; that moneys paid defendant on said drawing account were a debt due to plaintiff and were deducted from commissions earned by the defendant; and that money paid to defendant on option-to-purchase contracts where the sales were canceled and the goods returned by the customer was treated as a debt due plaintiff from defendant.

It was further alleged that on or about December 24, 1955, defendant resigned his employment with plaintiff without due no-

tice being given; that at said time numerous customer-option-to-purchase plan sales had been made by defendant upon which he had received the stipulated commissions; that since the termination of defendant's employment some of the merchandise which was sold under the customer-option-to-purchase plan was returned, said option-to-purchase not being exercised; that defendant refused to return moneys received as commissions theretofore paid him on said merchandise sold and thereafter returned, and that defendant was indebted to plaintiff therefor in the sum of $1,753.49.

There was a further allegation that defendant had seized and wrongfully converted to his own use certain property of plaintiff, all to plaintiff's damage in the sum of $500.

The prayer of the petition was for judgment in the sum of $2,123.64, together with interest and costs.

Defendant's answer, after admitting his employment by plaintiff, denied generally each and every allegation of the petition.

The defendant's counterclaim sought recovery of commissions alleged to be due defendant in the sum of $1,600. Plaintiff's reply to defendant's counterclaim was a general denial.

Plaintiff, Rhein's Music House, Inc., is an Illinois company engaged in the sale of musical instruments. Omar M. LeResche was President of the company, and Roger L. Lee was its Vice-President. These two, together with Walter Rhein, were the stockholders in said company. Defendant Taylor never became a stockholder in this Illinois company. Plaintiff's store is located at 124 East Main Street, Belleville, Illinois. At that store are sold pianos, organs, all kinds of musical instruments, television sets and high fidelity phonographs. One of the lines carried is band instruments, largely sold to school children.

Defendant's employment by plaintiff commenced April 26, 1954. Prior to that time

there were at least two meetings at the home of Mr. LeResche where terms of employment were discussed. Those present at the meetings were Mr. Lee, Mr. LeResche, and Ralph Taylor, the defendant. As a result of these meetings there was an agreement reached as to the amount of commissions to be paid to the defendant. Later, the commission rates were reduced to writing by Mr. LeResche in the form of a memorandum and given to plaintiff's bookkeeper, Mr. Arl. Defendant was given a copy of this memorandum. The other terms of the agreement were not reduced to writing. These commission rates were subsequently modified from time to time. An agreement was also reached as to defendant's drawing account, and it was fixed at $75 per week. This drawing account was to be charged against earned commissions at the end of each month. If the earned commissions exceeded the draw, defendant would be given a check for the difference. If for any month the drawing account exceeded the amount of earned commissions, the deficit would be carried forward and charged against future earnings. In addition, it was agreed that plaintiff would pay defendant's expenses while on the road.

During the discussions held prior to defendant's employment the question whether any draw in excess of earned commissions would be considered a debt, which defendant would be required to pay out of sources other than commissions, was not considered or discussed. The reason there was no such discussion was testified to by Mr. LeResche, as follows: "For the simple reason when you hire a man you don't expect him to go in the hole, and I knew the calibre of this man and in all the time he ever worked for me did he run into a problem like that that couldn't be solved in the next couple of months. * * * it seemed too remote, it didn't enter his mind or my mind, either one." It appears from the transcript that defendant had previously worked for LeResche at Lud-

wig's, which was a concern that sold musical instruments.

It was the practice of plaintiff in sales of band instruments to allow the purchaser to return the instrument at the end of a specified time. The sale would then be considered rescinded, and the down payment taken as rental for the instrument during the time it was in the hands of the purchaser. The down payment and the rental charge were in the same amount. The agreement between plaintiff and defendant with reference to commissions on such sales was testified to by Mr. Lee. According to his testimony, the agreement was that initially defendant would be paid the full commission on such a transaction, but if the instrument was returned the amount of the commission would be charged against his commission account. He was allowed no commission on the down payment, which was considered as rental.

Defendant testified that he did not recall any discussion prior to the time he went to work for the plaintiff relative to the matter of returned instruments; that he first learned his account was being charged with the amount of commission paid on returned instruments when he saw his first sales breakdown in June or July, 1954. Defendant stated that he thereafter continued to work for plaintiff through December, 1955, and during that time the system continued of charging back to his account the commission theretofore credited on instruments subsequently returned. Defendant admitted he knew during that entire period that such was the procedure in the employment of salesmen for plaintiff, but stated that he objected to this on several occasions to Mr. Lee—the first time in July, 1954—his objection being that he was never given credit for any of the moneys paid toward the instrument which was returned.

As an inducement for defendant to terminate his then employment and enter that of plaintiff, it was agreed between the parties (Mr. Lee, and Mr. LeResche acting for plaintiff) that a Missouri corporation, called Rhein's Missouri, Inc., would be formed. This company was incorporated shortly thereafter, on May 25, 1954. Defendant was a shareholder (owning a one-fourth interest) and a director in this company. The other stockholders (each owning a one-fourth interest) were Mr. Lee, Walter Rhein, and Mr. LeResche. Said company thereafter operated a store in Webster Groves, Missouri. Its business was the selling of organs and pianos, and was in the nature of a sales corporation for the products of Rhein's Music House, Inc., the plaintiff in this case. The products sold were bought from Rhein's Music House, Inc., the Illinois corporation. Sales contracts for the Missouri corporation secured by Mr. Taylor would be brought in or sent direct to the Illinois store for processing and the Illinois company would process them and discount any paper in connection therewith at the bank in the name of Rhein's Missouri, Inc. Rhein's Illinois would not go surety in the matter, but by formal resolution made itself liable in the event the Missouri corporation defaulted. The Illinois company warehoused the products sold by the Missouri company; and any sale made by the Illinois company to the Missouri company was at a profit. The Illinois company also sold to other dealers. All purchases by the Missouri company were from the Illinois company. The bookkeeper for the Illinois company also kept books for the Missouri company. The secretarial work for the Missouri company was done by the same girl who did secretarial work for Mr. LeResche, President of plaintiff.

During the whole time defendant was employed by plaintiff he was also employed as a commission salesman by Rhein's Missouri, Inc., for the purpose of selling organs and pianos. In soliciting sales for the Missouri corporation defendant used a van on which pianos and organs were placed. Defendant would then call on prospective customers with the merchandise thus displayed.

Defendant specialized in the sale of band instruments for plaintiff, and in the sale of organs and pianos for Rhein's Missouri, Inc., as heretofore described. The volume of band instrument business was heaviest in the fall of the year because of the opening of schools. Most of the school band programs are started in September, October and November. Whenever a customer either bought or rented a band instrument, if the transaction occurred in Illinois, the customer would ordinarily execute a regular sales contract. If the sale was made in Missouri, the customer would execute a chattel mortgage and a promissory note. A few times a bona fide rental agreement was used, but, by and large, the majority of band instrument transactions were on regular sales contracts. Defendant signed up only a few on rental agreements. Whether it was a down payment, a purchase price, or a rental payment, upon return of the instrument plaintiff kept the payment, considering the same as rental for the instrument returned. As heretofore stated, on returned merchandise defendant was not allowed any commission on the down payment or rental payment, but was debited with the full commission previously given him. This was the plaintiff's policy during the whole time defendant worked for plaintiff, of which defendant was fully aware.

On February 28, 1955, the records of plaintiff showed a deficit in defendant's account in the sum of $2,414.32. This deficit, according to plaintiff's records, represented the total amounts previously paid defendant as commissions on sales of instruments sold by defendant during the fall of 1954 which were later returned by customers. On April 9, 1955, defendant liquidated this deficit by endorsing a check in said amount to plaintiff, said check having been issued to defendant by Rhein's Missouri, Inc., for part of the commissions earned by him in selling organs and pianos for the Missouri corporation. On the same day, defendant was paid additional commissions by Rhein's Missouri, Inc., in the sum of $1,817.51, less withholding tax ($303.50) and social security tax ($78). This large accumulated payment was due to the fact that Rhein's Missouri, Inc., did not pay defendant any draw or earned commission from April, 1954, to April 9, 1955. Thereafter, plaintiff continued, as before, to carry forward any excess amounts due from defendant as a deficit, or paid to defendant the earned commissions, as was the practice theretofore.

For the year 1954 defendant drew $75 per week from plaintiff. In addition, commission checks were paid him at the end of the months of April, May and June, 1954. On September 11, 1954, defendant's draw was increased to $100 per week, which he continued to draw for the balance of 1954. On September 30, 1954, defendant was paid commissions of $491.83, and at the end of October, 1954, was paid the sum of $3,030.12. The total paid defendant for the year 1954, commissions and draw, was in the sum of $7,682.75. For the year 1955, during the months of January and February, and the first two weeks of March, defendant was paid $100 per week as a draw. From the third week in March, 1955, to August 27, 1955, defendant was paid no draw by plaintiff. For those months he received a draw of $100 per week from Rhein's Missouri, Inc. During those months defendant was engaged in selling organs and pianos for Rhein's Missouri, Inc., and the reason he desired a draw from the Missouri corporation instead of from plaintiff was because he did not want to create a deficit in his account with the Illinois company. On April 9, 1955, defendant was paid the March commissions in the amount of $532.33. On May 21, 1955, he was paid April commissions of $25.08. On June 30, 1955, he was paid June commissions of $682; and on July 31st the sum of $127.23. On August 27, defendant was paid $75 per week draw. and, commencing September 3, 1955, defendant was paid $150 per week for the balance of the year 1955. Commencing October 1, 1955, in addition to the $150

per week draw, defendant was given an additional check each week in the amount of $75, with a notation that the same was a commission advance. During the fall of 1955 plaintiff retained, as a reserve, 40% of the commissions due defendant, to take care of anticipated returns.

There is a dispute in the evidence as to when defendant terminated his employment with plaintiff. The undisputed evidence is that defendant left December 24, 1955, on vacation, and plaintiff contends that defendant terminated his employment on that date. Witness LeResche testified that he, on January 9, 1955, issued a stop payment on a draw check in the amount of $150 gross, $125.83 net. Witness Lee testified that defendant gave him a verbal resignation sometime the first week of January, 1956. Defendant testified that he resigned verbally to Mr. Lee on January 7, 1956.

When defendant left plaintiff's employment the reserve heretofore mentioned had been depleted, on account of returns of instruments, to the sum of $248.11. Thereafter, returns continued until there was a deficit in defendant's account in November, 1956, of $1,753.19. Mr. LeResche testified that after defendant terminated his employment with plaintiff, defendant made the statement that he did owe plaintiff money but it was just a question of how much.

Appellant, in his points relied on, attacks only the judgment for plaintiff on its cause of action. It is urged that said judgment is clearly erroneous because it is not supported by the evidence and contrary to the law. In support of his contention appellant cites those authorities which hold that, in the absence of a special agreement, an agent who receives advances on account of commissions cannot be held to personal liability for those advances, but in such cases the principal must look only to the commissions earned for reimbursement. Such seems to be the weight of authority. See cases collated in 165 A.L.R., p. 1367, and 57 A.L.R., p. 33. But these cases are not in point, and we do not deem them authority for relieving defendant of the duty of accounting for sums credited to his account as commissions where, under the agreement implied from the circumstances and the conduct of the parties, such sums were not actually earned. It appears from the evidence that commissions paid on instruments which were returned by the customers were in all cases charged to defendant's account during the whole time defendant represented plaintiff, and that was the agreement implied from the conduct of the parties.

At the time defendant terminated his employment a large number of instruments were in the hands of customers who later returned them, and thus under the implied agreement defendant was bound to account for commissions paid him on said instruments. We do not believe it was the intention of the parties to restrict recovery of these amounts to the fund of earned commissions on other sales. This is especially so when we consider the declaration of the defendant after he left plaintiff's employ, in which he acknowledged that the amounts due for these unearned commissions constituted a debt, stating that the only question was as to the amount. There was an implied liability on the part of defendant to repay such sums advanced. This, on the theory of money had and received.

In our judgment, the trial court properly found for plaintiff. The judgment is accordingly affirmed.

RUDDY, P. J., and WOLFE, J., concur.